needed. It's our last case of the afternoon. People versus Timothy Jackson for the appellate, Mr Stone and Miss Burton. And you're going to do an opening and closing opening and rebuttal for the Apple leave. Miss Johnson, you may proceed. My name is LaTanya Burton, one of the attorneys for the appellate. Mr Timothy Jackson. Mr Stone is also counsel for Mr Timothy Jackson. The state has conceded that when the trial court stated that the jury found beyond a reasonable doubt that there was an existence of a weapon when the jury found him guilty of aggravated robbery, that that was inaccurate. And we agree with the state. The issue before the court today was was that claim forfeited due to trial counsel not objecting during the sentencing hearing. It is well established in the state of Illinois that failure to object to a claim during trial is forfeit. However, it is also well established that when there is a question of plain error or that the rights of the party is substantially in jeopardy, that a reviewing court may look review the issue. In the Martin case of People v. Martin, the Illinois Supreme Court found that when considering an improper factor in aggravation in a sentencing, it is clearly affecting the defendant's fundamental right to liberty and impinges on that right not to be sentenced based on improper factors. Further, the Martin court held that it is not necessary for trial counsel to object to a court when it considers an improper factor during a sentencing hearing. It fact states that it's impractical for counsel to do so. So therefore, your honors, we do not believe that this issue has been waived because it is plain error and it did substantially affect the right of Mr Jackson when the trial court found that there was an existence of a weapon used. The court said when considering an improper factor in sentencing, it is a clear error and it does affect the substantial rights of the defendant. In the case of Mr. Jackson, when the jury found that there was not an existence of a weapon because they found him not guilty of armed robbery. Rather, justices, they found that there was an indication of a weapon being used, which is substantially different than an existence of a weapon being bruised. Counsel, can an argument be made that when we look at the totality of the circumstances, all of the comments of the trial court during the sentencing and imposing sentence that it was just a slip of the tongue that the trial court really didn't make the finding that you're saying that it made your understand justice. I understand where the court is coming from. However, I do not believe it was a slip of the tongue because the court further stated so on the record in the case, there is an existence of a weapon being used in a forcible felony. So it clarified it and it stated more succinctly that there was an existence of a weapon. And then it stated further when it began to sentence Mr. Jackson, that because of the forcible felony, the nature and the violence of the offense, in lieu of sentencing him to probation, which the court sentenced him to six years, it considered that weapon being used because it made the mention of there being the nature and violence of the offense. Well, what about the court's mention of the fact that the defendant was convicted of a class one felony, which is the classification for aggravated robbery versus armed robbery? Your honor, it did state that. However, because it put emphasis on the weapon being used, the existence of the weapon, we don't believe that it was a slip of the tongue. It actually took that improper aggravating factor in consideration when they sentenced Mr Jackson to the six years and imprisonment in lieu of sentencing him to probation. Your honor, our second point is that the trial court abuses discretion when it sentenced the appellant to six years in, um, in prison because we believe that was an excessive sentence. Um, the state would argue that because the court sentenced Mr Jackson within the statutory range, that that was not excessive. That is not the law. It's not enough just to say that a sentence because it is within the statutory range is permissible. If it when you're talking about excessive sentence because you have to consider the mitigating factors that was presented at the court at the time, such as the fact that there were five witnesses that testified on behalf of Mr Timothy Jackson, one that he was an assistant fire chief in his town. He had no violent criminal record whatsoever. Your honor, his family obligations, which are codified in the statute that should be considered the financial hardship of the family. He was taking care of some of his grandchildren and also had extended family members that he was financially taken care of. He was also employed and employable. He had one of his employers come up and speak on his behalf. The fact that he had a lack of a criminal history, but due to the fact of the trial court considering that a weapon had been used in a instead of looking at probation as an option when it stated that probation would deprecate the sentence because of the seriousness of the crime, believing that a weapon had been used based on those issues. Your honor, we do believe that Mr Jackson is entitled to having another sentence in front of a different judge to be considered. Thank you. Before you sit down, let me ask you about some decisions that deal with this. Some of the decisions this court has read. You mentioned, you mentioned Martin, but we have decisions from the Supreme Court of Illinois, People v. Reed after the Martin decision, which the Supreme Court noted that there is a statute added to the Unified Code of sentencing motion to allow the trial court the opportunity to review a defendant's contention of sentencing error and thereby to save the delayed expense inherent in an appeal if they are meritorious, requiring a defendant in precisely this sort of case where we're not sure what did the court mean and did the court misspeak or did the court simply say something wrong, to be given the opportunity to address that. And you're, you have argued as if, hey, what's the big deal here? We can always raise this question. And this court, as recently as the Hansen case, which was cited in, by the state, not as explicitly as I think perhaps it should have been, but decided December 30, just a few months ago, reiterated the same point that the defendant's claim, this was in Rathbone and Hansen, is precisely the type of claim the forfeiture rule is intended to bar from review but not first considered by the trial court. Had the defendant raised the issue in the trial court, the court could have acknowledged, could have answered the claim by either acknowledging its mistake in correcting the sentence or two, explaining that the court did not improperly sentence the Rathbone case, the Ehlers case. This court has addressed this issue repeatedly following the Supreme Court's decision and you don't discuss any of these cases at all. Well, Your Honor, you are correct as far as what the court is stating. However, the issue also has to look at the fact of my client's rights have been substantially affected. We specifically rejected that argument in all of these cases, saying that's the exception which would follow the rule because there's no case in these sentencing matters where a defendant can't say, hey, look at this. This is bad. I was sentenced. The trial court made a mistake. So even though I didn't comply with the statute, even though I didn't follow Reed, I want you to, appellate court, review the claim, precisely this claim where we are arguing, hearing an argument over what did the trial court mean and what was said, what was the reason for it when he had, reading this language now from these decisions, had the defendant raised it in the trial court, we would know explicitly. However, Justice, by not allowing the appellant to bring the case before a reviewing court because of a forfeiture, especially on something particular where there is plain error or his rights have been substantially affected, that would not be in the interest of justice to do so. Shouldn't you be under an obligation to be familiar with this case law that's come out of this court and distinguish Ehlers, Rathbone, and Hansen, among other cases, all of which have been decided in the last six years, essentially rejecting the very argument you've just now raised? Yes, Your Honor. However, I do... I don't see the necessity of those cases in your briefs, other than to say, hey, this is plain error, this is a substantial issue, review it, next case. Your Honor, you are correct. However, by not reviewing it, by having the forfeiture, which in this case and Supreme Court cases help, because these are still good law, Your Honor, it would not, it would be a grave injustice not to hear his claim when it substantially affects his rights. In what instance would it not be that the defendant could make the same argument when a defendant has failed to comply with the statute and comply with the requirement of calling the alleged error in propriety in sentencing to the trial court's attention? Wouldn't you... What rule is then left, the forfeiture, if we say, hey, it's a sentencing and look at this bad thing that occurred? The differences would be if they are not in plain error or if they don't effectively affect the rights of the defendant. Well, we're dealing with a specific statute here. We're not in their plain error analysis. We have a statute which says you have to do this, and if you don't, it's forfeit. Your Honor, the only thing that I can make it attend to analysis to is our hearsay statute. There are various exceptions to that rule because of the importance and the grave injustice that it would bring by this court not hearing it because of forfeiture. That's why this exception was made for the court. Ms. Johnson? May it please the court. I will pick up where Justice Feigman just left off with the forfeiture of the first argument. Beyond the statute that we have and beyond the distinguishing of Martin, which I will come to in a moment, there's also the fact that in the defendant's initial brief, they didn't even acknowledge the forfeiture. So by not acknowledging it, there was also no plain error argument that was made. I raised the burden that is put on the defendant to make a plain error argument as an exception to that forfeiture in my brief. And in doing so, I also then was put in the position of crafting a plain error response to what I suspect the plain error argument in the reply brief would be. Doing that because this court rarely actually resolves a case on forfeiture issues. And if I don't resolve it in my main brief and address it, I don't get a second opportunity. Well, I think that's correct, counsel. And I think it's appropriate for you to do that. But given the number of cases which have this court has rendered, I wrote them. I'm familiar with them. Rathbone, Ehlers, Hansen, and I think there's even another one as well. In all the last several years, Montgomery, I am a little surprised that you don't have more of a recitation about how these cases have consistently stood for this proposition. And that this is something that, as we've written, and I think we have cases, some of that series, directly on point where the argument is that a trial court is alleged to have improperly considered an element inherent in the offense. It would have been, I think, had you done that, put the defendant more on notice on appeal that, hey, you know, we got this body of case law. You might be in the wrong district because we've specifically rejected some second district interpretations from years past, which were in disagreement, but I know counsel's from Waukegan and might be thinking that some of that still applies here, and it doesn't. I'm just mentioning that as a suggestion and possibly as an explanation for why in the reply brief there's no discussion really of this at all. To the extent that I had any shortcoming in not being more lengthy in my recitation of the arguments that have come and the decisions that have come out of this court, I apologize. To the point that perhaps had I done that, trial counsel or appellate counsel would have been on more notice. Respectfully, it's not my job to put them on notice of what their argument is. I'm here to respond to their arguments and to any questions that the court has. But again, to any shortcoming on my part, I certainly apologize for that. I would agree that the issue has been forfeited. Martin did make the hold, as counsel said. However, Martin, the facts were different in the sense that the trial court there had repeatedly stated that the death of the victim was going to be considered in sentencing as aggravating. It was even included, as I recall, in the written order on the sentencing. That is not the facts that we have at play here. Also, Martin in no way did away with the requirement to follow up with a motion, even if it is found to be impractical at the time that the trial court is speaking of sentencing, to interrupt them on what may be misunderstood or not clear. So I don't think that Martin requires that forfeiture should be excused. And again, I still believe there was more responsibility to put a plain error argument in, despite my shortcomings. But moving to the merits of the case, the defendant has to overcome plain error here today. And the first step of plain error is closeness of the evidence. That the evidence was closely balanced. And here, the evidence was not closely balanced. And a reading of, again, the main brief, the reply brief, and my recollection of arguments made today, there hasn't been an assertion that the evidence was closely balanced even here today. If you look at the evidence, on one hand you have the defendant, and he testified that he did not take the vest. He testified that as to Kalman, he did not ask for the vest, and he in fact testified when he was asked, so did Kalman remove his vest? He said no, he did not. So he said, I had nothing to do with Kalman. Didn't threaten him, didn't ask him for the vest, didn't take the vest, he didn't take the vest off. He said with Mr. Bayer that he did take the vest, or that he asked him to take the vest off, but to keep the vest and not wear it until he was contacted by the president of his motorcycle club. That's what you have on the defense side. On the state side, you have, as the trial court found, video evidence and witness testimony that completely rebuts all of that. And that testimony came from not only the victims, but from one of the Midwest Percenters members as well, all saying he did request the vest from both, not just one. He did take the vest with him. Additionally, we have surveillance from a bank, a video camera that was on surveillance for the bank, and it shows that following the confrontation, you can Mr. Kalman's motorcycle going by, and he is bare from the waist up. And this is consistent with the testimony from the state witnesses. Prior to the confrontation, Mr. Kalman had his vest on, but he was not wearing any clothing or shirt underneath it. There's a confrontation, again, he was told to remove it, the vest was taken, and this video from this bank surveillance supports the fact that on the way back, the man was naked from the waist up, and the evidence was closely balanced, and the record certainly wouldn't support that there was. Then under the second prong of the Plain Error Analysis, you have whether the court's misstatement deprived the defendant of a sentencing hearing. I would argue, as Justice Holder-White mentioned, it was a misstatement. And as we stated and acknowledged in our brief, it was incorrect. But if you look at the record as a whole, immediately prior to the trial court's making of the misstatement, the trial court properly identified all three of the propositions that the jury was required and did find to find the defendant guilty of the aggravated robbery. And those were that the defendant, or one for who he was legally responsible, knowingly took property from the victims, did so by use of force or by threatening the imminent use of force, and did so while indicating verbally or by his actions that he was at the time armed. The trial court's misstatement immediately followed his correct recitation of those three propositions that had been found. And yes, he said, there has been, so the record in this case shows there is the existence of a weapon being used. The proper statement is there was the indication of a weapon being used. But that did not result in plain error. First of all, unlike the two cases again cited by defendant, he did not repeat this misstatement over and over. He made, the trial court made the misstatement and he made it once and that was it. It was not a focus of sentencing. Further, if you go and you look at the summary immediately prior to the pronouncement of sentence, in that summary he mentions the class one felony, as you already brought up Justice Holder-White. He mentions specifically three things that he was looking at having considered everything, but three things that focused in the trial court's mind. Those three things were, it was a crime of violence, there was mitigating evidence, and the court acknowledged there wasn't any dispute as to the mitigating evidence and the quality of that. And three, that the probation office had said if the defendant was sentenced to probation, there would not be any services that probation would be able to offer. Nowhere in there does the trial court bring up, again, the existence of a weapon or the misstatement of that, that there was an indication of a weapon. The trial court then sentenced defendant to six years, which was well within the four to 15 year range, and it was half of the 12 years that the state was seeking. So on the record that we have, I simply don't believe that the defendant has carried his burden to establish plain error with this misstatement. And again, there's no argument it was a misstatement. Moving to the second argument, we would also ask that this court find the trial court did not abuse discretion in sentencing defendant to six years. Again, the trial court specifically stated there was mitigating evidence. The trial court noted that that mitigating evidence showed the positive character of the defendant, but the trial court found it did not warrant a sentence of probation or less than the six-year sentence that was imposed. In so ruling, the trial court specifically noted, again, that if he were to accept the defendant's version of the accounts, every other witness that testified had to be wrong. And he didn't, again, it didn't support that. The defendant to be the only one right was not correct. He also noticed that the trial, that the defendant had been for 15 years a correction officer. He had been an alderman. He had been a volunteer fireman. And at 56 years of age, the belief was that this gentleman should have known better than to react, as he did, for being disrespected. And that was his defense, that these gentlemen had, he was the only one who alleged that they, sorry, he and one other alleged that they flipped him off. Everybody else said he just drove by. And again, it was a Midwest percenters who also testified that Kalman and Baird did not flip him off, but had just drove by. And for driving by, he was going to go, he had been so disrespected that he went after these gentlemen. And the court found that, again, he should have known better, and that added to the seriousness of the offense. Finally, in the record and based on the evidence that came out at trial, it showed that, despite the fact defendant here had been working in enforcement for 15 years, when he was confronted by a fellow enforcement officer, and he was ordered to put his hands up and to get on the ground, he had absolutely no respect for that authority. Authority that I would suspect, as a correction officer, he would have required from the people he was responsible for caring for. Instead, when this officer, with a gun, and it was a low ready position, which the officer described as loaded, safety off, but aimed toward the ground. With this officer, with this gun, and this stance, ordering repeatedly, five to six times, raise your hands, get on the ground. Instead of obeying and respecting that authority, he challenged it. He purposefully walked toward this officer, the whole time baiting the officer, and taunting him with, pardon the language, fuck you, are you going to shoot me? When he finally got on the ground, it was only because the officer had raised his gun from a low ready position to aim directly at the defendant's head, and that's when the defendant got on the ground. But he still continued the taunting, saying, I hope you have a nice house, it's going to be mine, or I'll play your little game now. It is both disturbing and ironic that this gentleman, who had been so disrespected, that he just pursued, confined, and robbed two people for merely driving through his town while belonging to a rival gang, had so little respect for this officer. And that certainly is something that the trial court was allowed to consider in sentencing him, not to probation, but to a low six years, given the four to fifteen year range. So for those reasons, the Thank you, counsel. Mr. Stone? Without question, it would have been better had trial counsel filed a post trial motion, a post sentencing motion, without question. As the statute requires. As a statute requires, without question. However, this is not a case of a sentencing judge using an element of an offense as an aggravating factor. This is a case of a sentencing judge using as an aggravating factor the very thing that a jury had just acquitted, the existence of a weapon being used in a forcible felony. I think that's as plain an error as we'll find. What if he just misspoke as he's reviewing the evidence? You're looking, by the way, I should point this out, at the panel, we're in the appellate court now, but we have cumulatively, I'm sure at least thirty years as a trial judge, and I hate to think of all the times that I'm speaking on the record and I've said X and I meant to say Y, and especially when you're reviewing what all of this is, and someone might have said, wait a second, judge, the jury found that there was no weapon involved in this case, and the judge might have said, you're right, I misspoke. Let me go back and do it again. I don't believe that's the facts of this case. But we don't know that. Well, we do know that a fellow whose conduct was unworthy of his life story and in violation of the law got sentenced to two years more than the minimum on a probationable offense because the judge did say that he found there was the existence of a weapon being used in a forcible felony. That's what we know. Everything else is guess. I don't want to guess whether or not the judge meant what he said. I think judges often mean what they say. It's a good policy. It is a good policy. If the judge said and said wrongly, and I think we all agree that the judge was wrong, that the existence of a weapon was used in the commission of a forcible felony, I'm paraphrasing, not quoting, then I think that the record supports our claim that Mr. Jackson was denied a fair sentencing hearing, a due process violation. I understand the statute. I've actually written about that statute, the statute that requires a post We don't have one in this case, but we do have a judge using as an aggravating factor the presence of a weapon when a jury found there was none. This is deeply troubling. It ought to trouble all of us that a judge found the presence of a weapon in a case where a jury found the defendant not guilty. The people have suggested this sentence cannot be excessive because it's within the range. And of course we're arguing under Supreme Court Rule 615 v. 4 that you should reduce the sentence that was imposed, reduce the punishment in the language of the rule. To suggest that because a sentence is within the sentencing range prescribed by the legislature, it is not excessive, is simply bad analysis. Any sentence above the prescribed range would be void. A sentence is excessive. Well, the argument counsel made isn't that. The argument made is a 4 to 15 year range, and there's a 6 year sentence. That's towards the bottom. Would your argument, for instance, be the same if it were 4 years? The argument would be the same if the judge had sentenced Mr. Jackson to 4 years because probation was a sentence. The Federal Congress has great language in its sentencing code. It says that judges shall not impose a sentence greater than necessary. This sentence of 6 years, 2 years more than the minimum, a non-probation sentence for this man was in fact a sentence greater than necessary. And for all of those reasons, we would urge you to remand this court, this case, for a new sentencing hearing before a different judge. Thank you. Thank you, counsel. We'll take this matter under advisement.